UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENIEL JESUS BLANCO-RODRIGUEZ,

Petitioner,

v.

JULIO HERNANDEZ et al.,

Respondents.

CASE NO. 2:26-cv-03494-JNW

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

## 1. INTRODUCTION

Daniel Jesus Blanco-Rodriguez is a Venezuelan asylum applicant who was detained on entry and paroled into the United States on September 15, 2022. For nearly three years, he built a life for himself in Washington, where his U.S.-asylee wife and their two daughters also live. On July 17, 2025, Immigration and Customs Enforcement (ICE) re-detained him at a routine check-in without notice or an opportunity to be heard and sent him to the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. Blanco-Rodriguez filed a petition for writ of habeas corpus. Dkt. No. 1. For the reasons below, the habeas petition is GRANTED.

## 2. BACKGROUND

Blanco-Rodriguez fled Venezuela because he feared the Venezuelan government would torture or kill him. Dkt. No. 1-2 ¶ 3. He entered the United States without inspection with his older daughter, then a minor, in mid-September 2022, and the Department of Homeland Security (DHS) detained him for one day. *Id.* ¶¶ 4, 8; Dkt. No. 6 ¶ 4. DHS released Blanco-Rodriguez on parole on the condition he report to the ICE office near his final destination in the United States within sixty days. Dkt. Nos. 1-2 ¶ 5; 7-1. ICE also enrolled him in an Alternatives to Detention (ATD) program. Dkt. No. 6 ¶ 6. Blanco-Rodriguez moved to the greater Seattle area and reported to the ICE office in Tukwila, as well as the Intensive Supervision Appearance Program (ISAP) required by his ATD. Dkt. No. 1-2 ¶ 6. He reported to every scheduled ICE check-in and never violated any conditions of release DHS or ICE imposed. *Id.* ¶¶ 5, 13.

For nearly three years, Blanco-Rodriguez lived in Washington along with his wife and two daughters. His wife entered the United States with their younger daughter, and an Immigration Judge (IJ) granted her asylum on October 10, 2022. *Id.* ¶ 8. On November 3, 2022, Blanco-Rodriguez's wife filed an asylee relative petition on his behalf which remains pending. *Id.* ¶ 9. Blanco-Rodriguez also filed his own asylum application on September 12, 2023. *Id.*

On or around April 28, 2025, the City of Woodinville charged Blanco-Rodriguez with fourth degree assault related to alleged domestic violence. *Id.* ¶ 10. He pled not guilty and posted bond. *Id.* He says he did not understand that the court had set another hearing a week later; he missed it, and the court issued a

bench warrant. *Id.* When he learned of the warrant, he called the court and posted an appearance bond, and the court recalled the warrant. *Id.* He appeared at his next hearing on June 2, 2025, and the court set another for August 4. *Id.* In April 2025, Blanco-Rodriguez reported his arrest to ICE and ICE took no action. *Id.* ¶ 15. Blanco-Rodriguez has no other criminal record outside of a minor traffic violation. *Id.* ¶ 12.

On July 17, 2025, Blanco-Rodriguez reported for a scheduled ICE check-in and ICE took him into custody. *Id.* ¶ 14. Blanco-Rodriguez says ICE refused to give him a reason. *Id.* ¶ 15. ICE's arrest report says officers told him "a custody re-determination has been conducted" and that he was being remanded "due to his recent criminal history." Dkt. No. 7-2 at 3. Either way, no one told him beforehand that ICE was reconsidering his custody, and no one gave him a chance to respond. Blanco-Rodriguez has been detained at NWIPC ever since. Dkt. No. 1-2 ¶ 16. The Government did not serve him with a Notice to Appear (NTA) until August 8, 2025. Dkt. Nos. 6 ¶ 12; 7-4. Because ICE took him into custody before his next scheduled criminal hearing, Blanco-Rodriguez could not appear, and on October 6, 2025, the court issued a second warrant; he has been unable to litigate his criminal case from detention. Dkt. No. 1-2 ¶ 11.

On October 16, 2025, an IJ denied Blanco-Rodriguez's asylum application because of his pending criminal charge. The IJ issued an order of removal but granted Blanco-Rodriguez's application for withholding of removal to Venezuela. *Id.* ¶ 17; Dkt. No. 6 ¶ 15. His appeal of the IJ's decision is ongoing. Dkt. No. 1-2 ¶ 18.

Blanco-Rodriguez filed his first habeas petition on April 10, 2026, challenging only his prolonged detention under due process. Magistrate Judge S. Kate Vaughan denied the petition, finding that the record was insufficient to determine whether due process entitled Blanco-Rodriguez to a bond hearing and that *Mathews v. Eldridge* did not apply because he had not challenged the circumstances of his re-detention. *Blanco Rodriguez v. Hernandez*, No. C26-1248-SKV, 2026 WL 1413204, at *4–6 (W.D. Wash. May 20, 2026).

On June 18, 2026, an IJ conducted a bond hearing where the IJ found a lack of jurisdiction because Blanco-Rodriguez was subject to mandatory detention under *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025). In the alternative, the IJ denied bond because Blanco-Rodriguez "did not meet his burden of proof that he is not a danger or a flight risk." Dkt. No. 7-6 at 3–5. The IJ relied on the pending charge, a no-contact order entered in that case, and the two missed criminal hearings, and found that Blanco-Rodriguez and his wife are separated. *Id.* at 4. Blanco-Rodriguez's appeal of the bond decision also remains pending. Dkt. No. 6 ¶¶ 20–22.

## 3. DISCUSSION

### 3.1 Legal standard.

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723,

779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**3.2 The Court will not require administrative exhaustion.**

The Government argues that Blanco-Rodriguez must first appeal the IJ's bond decision to the Board of Immigration Appeals (BIA). Dkt. No. 5 at 7–8 (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). Exhaustion here is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). "Courts may require prudential exhaustion if 1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citation modified). Even then, a court may waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (citation modified).

His challenge to the adequacy of the bond hearing he did receive is a constitutional claim suited to federal court review, for which "prudential exhaustion is not necessary." *Vasquez v. Scott*, No. 2:26-CV-02515-DGE, 2026 WL 2285535, at *2 (W.D. Wash. Aug. 7, 2026) (citation modified). And the Government itself says *Matter of Q. Li* "binds the immigration judge on jurisdiction," Dkt. No. 5 at 8, so further agency review is futile. *See Hernandez*, 872 F.3d at 989. Finally, Blanco-Rodriguez has been detained nearly fifteen months; requiring him to wait out a BIA appeal would inflict the harm the process he seeks is meant to prevent. *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1101–02 (W.D. Wash. 2026). The Court will consider the merits.

**3.3 Revocation of release and re-detention must comport with due process even under § 1225(b)(2).**

The Government contends Blanco-Rodriguez is lawfully detained because ICE re-detained him under 8 U.S.C. § 1225(b)(2) after his parole expired. Dkt. No. 5 at 8–9. That premise is doubtful. Blanco-Rodriguez's parole expired on November 16, 2022, and ICE did not re-detain him until almost three years later. Dkt. Nos. 7-1 at 2; 1-2 ¶ 7; 6 ¶ 10. "[W]here parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply. *Colmenarez v. Hernandez*, No. 2:26-CV-00845-GJL, 2026 WL 850535, at *3 (W.D. Wash. Mar. 27, 2026) (citing *Dieng v. Hermosillo*, No.

2:26-cv-00190-LK, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026)). But the Court need not resolve the statutory question.

Even assuming Blanco-Rodriguez is detained under § 1225(b)(2)(A), the constitutional question remains: was Blanco-Rodriguez deprived of his liberty without due process when ICE revoked his release and re-detained him without notice or a hearing? Courts in this District have consistently answered yes.[1]

The Government's citation to *Khan v. Hernandez* does not foreclose due process review here. Dkt. No. 5 at 9 (citing No. 26-cv-01697-TMC, 2026 WL 1893716, at *1–2 (W.D. Wash. July 1, 2026)). *Khan* concerned whether the petitioner was entitled to bond as a member of the *Rodriguez Vasquez v. Bostock* class; the court declined to

---

[1] *See, e.g.*, *Osuna Benitez v. Hermosillo*, No. 2:25-cv-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (citing *Zadvydas v. Davis*, 533 U.S. at 693); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (quoting *E.A. T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)) ("[T]he fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'"); *Arrioja Blanco, et al. v. Hermosillo, et al.*, No. C26-493-MLP, 2026 WL 548056, at *2 (W.D. Wash. Feb. 27, 2026) ("Courts have held that noncitizens paroled or released from § 1225(b) custody retain a protected liberty interest in continued release and are entitled to procedural safeguards before being returned to custody, regardless of whether § 1225(b)(1) or (b)(2) applies."); *Bealter Reyes et al. v. Hermosillo et al.*, No. 2:26-cv-00270-TLF, 2026 WL 507678, at *2 (W.D. Wash. Feb. 24, 2026) ("[T]he Court need not consider whether there is a statutory basis . . . upon which petitioners may be lawfully detained . . . because even assuming a statute permits government detention of an individual, the Due Process Clause may provide procedural protections not found in the statue."); *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected.").

consider whether his re-detention complied with due process because the petitioner introduced the argument for the first time in his traverse and cited cases that did not apply. *See* 2026 WL 1893716, at *1–3 (citing *Rodriguez Vasquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), *aff'd,* 183 F.4th 1160 (9th Cir. 2026)).

Finally, the Government argues that because Blanco-Rodriguez was paroled and never admitted, he has only the process Congress provided by statute. Dkt. No. 5 at 10 (citing *Padilla v. U.S. Immigr. & Customs Enf't*, No. 24-2801, --- F.4th ----, 2026 WL 2822044, at *12–13 (9th Cir. Sept. 21, 2026)). But *Padilla* limits that argument, finding instead that "[a]dmission and detention occupy fundamentally different positions in our legal order," *id.* at *16, so even when a noncitizen is subject to mandatory detention under § 1225(b), he is entitled to challenge his detention under due process, *id.* at *19. "Noncitizens who arrive illegally and are found away from the border well after arrival are protected from arbitrary detention in violation of the Due Process Clause." *Id.*

### 3.4 Blanco-Rodriguez's re-detention without notice and a pre-deprivation hearing violates procedural due process.

The parties agree that *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), supplies the test here. Dkt. Nos. 1 ¶ 3; 5 at 9–10. That marks the difference between this petition and the last one. Blanco-Rodriguez's first petition challenged only the length of his detention, so the Court declined to apply *Mathews*; this petition challenges the circumstances of his re-detention, and *Mathews* governs that claim. *Blanco Rodriguez*, 2026 WL 1413204, at *3–4; Dkt. No. 5 at 10. The question is not whether the IJ weighed the bond factors correctly in June 2026—the Court does not

reach that—but whether the Government could revoke Blanco-Rodriguez's release and return him to custody in July 2025 without telling him it was doing so or giving him a chance to be heard. Under *Mathews,* courts weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest. *Id.* This Court has previously found no reason to distinguish parole cases from similar cases in which ICE revoked orders of supervision without providing pre-deprivation notice or an opportunity to be heard. *See Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *7 (W.D. Wash. Mar. 11, 2026); *Gomez Candelo v. Noem*, No. 2:26-CV-00576-JNW, 2026 WL 879049, at *4 (W.D. Wash. Mar. 31, 2026). All three *Mathews* factors favor Blanco-Rodriguez.

First, his private interest is perhaps at its height, as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Blanco-Rodriguez lived in the community for almost three years. His wife and two daughters are here. Dkt. No. 1-2 ¶¶ 4, 8. He has a pending asylum application and appeal. *Id.* ¶¶ 9, 18. Blanco-Rodriguez's liberty interest exists even when release is conditional and must be afforded substantial weight. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) (collecting cases); *see also Dieng*, 2026 WL 411857, at *7 ("A petitioner's liberty interest [does] not expire along with his parole.") (citation modified). "When he was released from his initial detention on parole, Petitioner took with him a liberty

interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025)

The Government contends his interest is lessened because he seeks "continued release after immigration parole," so he has the same liberty interest as a person stopped at the border. Dkt. No. 5 at 10 (citing *Kleber Vasquez v. Hernandez*, No. 2:26-cv-02873-TMC, 2026 WL 2936770 (W.D. Wash. Sept. 29, 2026); *Padilla*, 2026 WL 2822044, at *19). Neither case carries that weight. The Government misreads *Padilla*, as discussed above. *See* 2026 WL 2822044, at *19; *supra* § 3.2. And while *Kleber Vasquez* found that the petitioner's "legal status regarding admission reverted to that of an arriving noncitizen once her parole expired," the court held that "the Due Process clause continued to require constitutionally adequate procedures surrounding her detention." 2026 WL 2936770, at *2. *Kleber Vasquez* also acknowledged the cases in this district that found an implied continuation of parole but determined they did not apply because ICE re-detained Kleber Vasquez "within a short time" after the expiration of parole—it lodged a detainer the day she was arrested, three months after her parole ended. 2026 WL 2936770, *4. Not so here. By the Government's own account, Blanco-Rodriguez's parole expired in November 2022, and ICE waited 32 months, through three more years of check-ins and an arrest it learned of in April 2025, before acting.

The Court remains persuaded by the many decisions holding that the statute under which a noncitizen is detained does not override his constitutional due process rights. *Morales v. Hernandez*, No. 2:26-CV-01686-DGE, 2026 WL 1753643,

at *4 (W.D. Wash. June 18, 2026) ("Courts in this district have consistently concluded that an individual such as Petitioner who has been released on parole under § 1182(d)(5)(A) and has lived with relative freedom in the United States for a number of years, has a protected interest in not being detained."); *see also supra* at 7 n.1. Nor does the expiration of parole change the analysis. ICE "did not arrest [Blanco-Rodriguez] when [his] parole expired," does not say it re-detained him because it expired, and so "exercised its discretion to continue [his] conditions of release past the automatic expiration of [his] parole." *Espinoza Palacios*, 2026 WL 686138, at *9.

Second, the risk of erroneous deprivation and value of additional procedures are high. The Government argues the risk of error is low because it asserts ICE re-detained him based on his criminal arrest. Dkt. No. 5 at 11. But Blanco-Rodriguez informed ICE of his arrest three months before ICE re-detained him. Dkt. No. 1-2 ¶¶ 10, 14–15. And a reason to detain is not a substitute for process: "That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Whether an unresolved misdemeanor charge shows that a man with no other record and three years of compliance is a danger or a flight risk is a factual dispute that "should be resolved at a pre-deprivation hearing, rather than resolved after the fact by this Court." *Ramirez Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *5 (W.D. Wash. Nov. 25, 2025).

The Government also argues the NTA and eventual bond hearing supplied the process due. Dkt. No. 5 at 11. But the Government served the NTA over three weeks after re-detaining Blanco-Rodriguez. Dkt. Nos. 7-4; 1-2 ¶ 7. Notice given to someone already in custody is not notice before the deprivation. And as other courts in this District have found, the fact "[t]hat the express terms of the parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide an individualized hearing *prior* to re-detaining the parolee." *Shinwari v. Hermosillo*, No. 2:26-cv-00009-RAJ, 2026 WL 262605, at *4 (W.D. Wash. Jan. 30, 2026) (quoting *Ramirez Tesara*, 800 F. Supp. at 1136) (citation modified).

The Government also argues the post-deprivation bond hearing Blanco-Rodriguez had in June 2026 was enough. Dkt. No. 5 at 11. But that hearing does not cure the violation. First, it came eleven months after the deprivation, and a "post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Second, the IJ's primary finding "that there is no jurisdiction over the bond request," Dkt. No. 7-6 at 5, would bar the precise process the Constitution demanded: an individualized analysis of Blanco-Rodriguez's danger or flight risk.

Second, though the IJ did engage in an alternative analysis of Blanco-Rodriguez's danger and flight risk as requested, the IJ improperly placed the burden of proof on Blanco-Rodriguez. "Although the law in the Ninth Circuit is somewhat uncertain, district courts in the Ninth Circuit have repeatedly held the

clear and convincing evidence standard should apply in the context of immigration detention hearings." *Hussaini v. Hermosillo*, No. 2:26-CV-01618-TLF, 2026 WL 1733159, at *6 (W.D. Wash. June 16, 2026) (citing *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025); *Caglar v. Wamsley, et al.*, No. 2:26-cv-00787-TMC, 2026 WL 1123515 (W.D. Wash. Apr. 24, 2026)). But regardless of who bore the burden, the June 2026 hearing failed for the reasons just given.

Third, the Government's interest in re-detaining Blanco-Rodriguez without a hearing is low. Nothing prevented ICE from scheduling a hearing before or after it became aware of his arrest record. *See E.A. T.-B.,* 795 F. Supp. at 1316. And the Government's reliance on *Kleber Vasquez* cuts against it. The Government's interest in enforcing its humanitarian parole statute "is *weakened* when it fails to act within a reasonable time upon the expiration of a noncitizen's parole." *Kleber Vasquez*, 2026 WL 2936770, at *4 (citation modified). The Government's long delay all but extinguishes here.

All *Mathews* factors favor Blanco-Rodriguez and support finding that his re-detention violated procedural due process. *Aslan v. Wamsley*, No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1324). Courts in this District and elsewhere have consistently reached the same conclusion. *See, e.g.*, *Tessema v. Bondi,* No. C25-2330-JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), *report and recommendation adopted,* No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5,

2026) ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release [citation omitted], no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the community."); *Ramirez Tesara*, 2025 WL 3288295, at *1, *6 (even when it alleges supervised release violations, the Government must provide notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1201–03 (W.D. Wash. 2025) (revocation of an OREC requires notice and a pre-deprivation hearing); *Nguyen v. Bondi*, No. 2:25-CV-02723-RAJ, 2026 WL 183819, at *4 (W.D. Wash. Jan. 23, 2026) (revocation of an OSUP requires notice and a pre-deprivation hearing); *Tzafir v. Bondi*, No. 25-CV-02067-JHC-SKV, 2026 WL 74088, at *3–5 (W.D. Wash. Jan. 9, 2026) ("The Government's redetention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to her by the Constitution."). This case presents nothing that would warrant a different result.

It is undisputed that Blanco-Rodriguez did not receive notice or a hearing before his re-detention. A bond hearing held eleven months later did not remedy the violation. Keeping Blanco-Rodriguez detained while the Court gives the Government another opportunity to provide him with notice and an opportunity to be heard before re-detention would reward the Government's continuing due process violation. Accordingly, the appropriate remedy is release. Similarly, because Blanco-Rodriguez was previously managed under less restrictive conditions of release, the Government must demonstrate that those alternatives to detention are no longer adequate before reimposing the most restrictive option. *See Luis Barraza*

*Laguna et al. v. Julio Hernandez et al.*, No. 2:26-CV-00864-GJL, 2026 WL 2516736, at *2 (W.D. Wash. Aug. 14, 2026).

The Court GRANTS the habeas petition on this basis and declines to address the remaining grounds in the petition, including Blanco-Rodriguez's challenge to the IJ's alternative findings and his claim that his detention has become unreasonably prolonged. Dkt. No. 1 at 15–18.

## 4. CONCLUSION

Accordingly, the Court orders as follows.

1. The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.
2. The Government must RELEASE Blanco-Rodriguez within TWENTY-FOUR (24) hours of this order, subject to the conditions of his most recent parole agreement.
3. Within FORTY-EIGHT (48) hours of this order, the Government must provide the Court with a status report confirming that Blanco-Rodriguez has been released from custody and informing the Court of the date and time of his release.
4. The Government may not re-detain Blanco-Rodriguez during the pendency of his removal proceedings without first giving him written notice of the basis for the proposed re-detention and a hearing on that notice before an immigration judge, held before re-detention, at which the Government bears the burden of justifying it.

5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 14th day of October, 2026.

Jamal N. Whitehead
United States District Judge